UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

JENNY HARPER, as the widow and next )
of kin of JAMES H. HARPER, )
LEONARD D. HUTCHISON, )
 )
    *Plaintiffs,* )
*v.* )       No. 3:97-cv-80
 )       *Edgar*
ARTHUR BOHANAN, JIM MORRIS, )
PATRICK WADE, JOHN AND JANE )
DOES, J. MIKEL DIXON, WILLIAM )
CRABTREE, REX OWENBY, JOE )
MANN, CLYDE MERRYMAN, )
DAVID JENNINGS and JAMES )
DAVID COMER, )
 )
    *Defendants.* )

**MEMORANDUM**

Plaintiffs Jenny Harper, as the widow and next of kin of James H. Harper, and Leonard

D. Hutchison bring this civil rights action against state and federal law enforcement officials and

prosecutors, Arthur Bohanan, Jim Morris, Patrick Wade, William Crabtree, Rex Owenby, Joe

Mann, Clyde Merryman, David Jennings, one former prosecutor, J. Mikel Dixon, and one private

citizen, James David Comer. Plaintiffs assert claims for violation of unspecified constitutional

rights against prosecutors and former prosecutor General Crabtree, Mr. Jennings, and Mr. Dixon

in their individual capacities pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs also

assert Section 1983 claims for violation of their constitutional due process rights under the

Fourteenth Amendment to the U.S. Constitution against City of Knoxville Police Officers

Patrick Wade, Arthur Bohanan, and Jimmie Morris in their official capacities. Plaintiffs further

assert Section 1983 claims against Officers Wade, Bohanan, and Morris in their individual

capacities. Plaintiffs further assert a Section 1983 claim against Mr. Comer, an alleged police

informant. Plaintiffs also bring claims under *Bivens v. Six Unknown Named Agents of the*

*Federal Bureau of Narcotics*, against Federal Bureau of Investigation ("FBI") Agents Rex

Owenby, Clyde Merryman, and Joe Mann for violation of their due process rights under the Fifth

and Fourteenth Amendments to the U.S. Constitution. 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct.

1999 (1971).

Defendants General Crabtree, Mr. Jennings, and Mr. Comer have moved to dismiss

plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim for which relief may be granted. [Court Doc. Nos. 43, 53, 56]. Mr. Dixon moves

for summary judgment dismissal of plaintiffs' claims against him. [Court Doc. No. 54]. After

reviewing the record in the light most favorable to the plaintiffs, the Court concludes that

Defendants Crabtree's and Jennings' motions to dismiss will be GRANTED. Defendant Dixon's

motion for summary judgment will also be GRANTED. Defendant Comer's motion to dismiss

will be DENIED.

## I.      Background

### A.      Criminal Convictions of Hutchison and Harper

The Court takes the relevant facts pertaining to the alleged actions of Crabtree, Jennings,

Dixon, and Comer from the Amended Complaint and from state court criminal decisions

involving the plaintiffs' appeals and post-conviction proceedings. [Court Doc. No. 36, Amended

Complaint]; *Hutchison v. State*, 1997 WL 789923 (Tenn. Crim. App. 1997); *State v. Harper*, 753

S.W.2d 360 (Tenn. Crim. App. 1987); *State v. Hutchison*, 1990 WL 170437 (Tenn. Crim. App.

1991); *Hutchison v. State*, 118 S.W.3d 720 (Tenn. Crim. App. 2003); [Court Doc. No. 31-2].[1]  In

1985 a jury convicted Mr. Hutchison and Mr. Harper of theft of a vehicle and attempted

homicide of James David Comer that occurred on September 1, 1982.  Amended Complaint.

Mr. Hutchison served around fourteen years in the Tennessee State Regional Correction Facility

Bledsoe State Penitentiary for possession of burglary tools, burglary of an automobile, and

felonious assault with intent to commit second degree murder.  *Id.* at ¶ 15.  Mr. Harper served

fourteen months in the Knox County jail and the Knox County Penal Farm for burglary of an

automobile and felonious assault with intent to commit second degree murder.  *Id.* at ¶ 16.

Plaintiffs allege that Comer's report to police at the scene of the crime provided a

primary basis for their convictions. Amended Complaint, ¶ 17.  Mr. Comer, the crime victim,

informed the police that one of two individuals shot him when he confronted them as they were

in the process of attempting to steal the automobile belonging to a neighbor in his apartment

complex.  *Id.*  Mr. Comer informed the police that the two individuals shot at him as they tried to

flee the parking lot in their own vehicle, an "old type racing car with red primer paint."  *Id.*

However, plaintiffs allege that conflicting accounts of the events existed and that some evidence,

including a witness statement, suggested someone other than plaintiffs committed the crimes.  *Id.*

Later in the day on the date of the crime, September 1, 1982, two of the defendants, FBI

Agents Merryman and Mann, received information that persons other than plaintiffs committed

the crimes. Amended Complaint, ¶ 20.  Agents Merryman and Mann were operating "deep

---

[1]  The Court notes that a district court "may consider public records in deciding a motion
to dismiss without converting the motion to one for summary judgment."  *Kostrzewa v. City of
Troy*, 247 F.3d 633 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.
1997)).

undercover" and investigating an automobile "chop-shop ring" at the time. *Id.* They spoke with two men named Paul Allen and Tommy McClanahan. Both McClanahan and Allen informed Agents Merryman and Mann that a man named Billy Hall admitted to them that he shot Comer. *Id.* Allen informed the agents that Hall had brought the car to Allen's shop because he feared that the vehicle might connect him to the Comer shooting. *Id.* Hall's vehicle fit the description of the car Comer had given to the Knoxville police. *Id.*

Agents Merryman and Mann found the information received from McClanahan and Allen to be highly credible. Amended Complaint, ¶ 21. However, because of their undercover status, they refrained from providing the Knoxville Police Department with the information. *Id.* They also failed to make a written report of their communications with McClanahan and Allen. Agents Merryman and Mann contacted Special Agent Rex Owenby and expected him to report their information to the Knoxville Police Department because of his contacts there. *Id.* However, it appears that the information from Agents Merryman and Mann did not reach the prosecutor's office. The Amended Complaint states, "the Tennessee Court of Criminal Appeals and the Knox County Criminal Courts have held as a matter of law that the Attorney General's Office was unaware of that exculpatory information until after Harper and Hutchison had been convicted." *Id.*

On September 3, 1982 defendant Officers Morris and Wade arrested Hutchison. Amended Complaint, ¶ 22. Comer identified Hutchison from a photographic line-up in which Hutchison's photograph had been altered to increase his height by about nine inches. When the police arrested Hutchison they seized a bag of tools from his home and a 1977 Ford Mustang painted in red primer.

-4-

The Amended Complaint alleges that Comer was an informant who was cooperating with the police to avoid a criminal prosecution for the dispensing of large quantities of illegal substances. Amended Complaint, ¶ 23. Plaintiffs allege that certain police officers believed Hutchison was involved in thefts of automobiles and were seeking information that would lead to his arrest. Comer allegedly agreed to cooperate with the police by identifying Hutchison in the photographic line-up. *Id.* In another photographic line-up, Comer further identified Harper as the second shooter. *Id.* at ¶ 25.

On September 8, 1982 the Knoxville Police Department sent the tools seized from Hutchison's home to an FBI laboratory for testing. The FBI sent the police department two separate lab reports, one of which was inconclusive and one of which was exculpatory. Amended Complaint, ¶ 27. Defendants did not disclose either report to Harper or Hutchison before their trial. *Id.*

A grand jury indicted Harper and Hutchison in 1983 for burglary of an automobile and felonious assault. Amended Complaint, ¶ 28. Hutchison also received an indictment for possession of burglary tools. *Id.* In December 1984 Mr. Dixon prosecuted the case against Hutchison and Harper. *Id.* at ¶ 30. Hutchison and Harper did not receive information about the differing version of events, the information obtained by Agents Merryman and Mann, or the results of the FBI laboratory tests before the trial. *Id.* at ¶ 31. The trial resulted in a mistrial; however, the jury convicted Hutchison of possession of burglary tools. *Id.* at ¶ 34.

The State decided to retry Hutchison and Harper on the felonious assault and automobile burglary charges. Prior to the second trial, Hutchison and Harper received information that a person named McClanahan had information helpful to them. Amended Complaint, ¶ 36. Also

prior to the second trial, two FBI agents visited Hutchison and informed him that they had information that someone else was responsible for the crime for which Hutchison was charged. The agents refused to provide Hutchison with more information unless he helped them. Because Hutchison could not help the agents, they left without revealing any more information to Hutchison. Based on the information Hutchison received from the agents, Harper's attorney moved for a continuance of the second trial to locate and interview McClanahan. *Id.* at ¶ 37.

Defendants Dixon and Jennings prosecuted the second trial of Hutchison and Harper in August 1985. Amended Complaint, ¶ 38. Hutchison and Harper still had not received information relating to the FBI laboratory reports, and Hutchison's attorney stipulated that the results of the FBI tests were inconclusive. *Id.* at ¶ 39. A jury convicted Harper and Hutchison at the second trial. Hutchison received consecutive sentences of fifteen years for assault and ten years for burglary to be served following the ten years he was serving for possession of burglary tools. Harper received concurrent sentences of five years for the burglary and three years for the assault. *Id.* at ¶ 41.

Prior to his sentencing in October 1985, Hutchison asked a supervisor of the Knoxville FBI office, Agent Richard O'Rear, to meet with him. Amended Complaint, ¶ 41. Agent O'Rear agreed, and after meeting with Hutchison, Agent O'Rear met with Agent Merryman. Agent Merryman informed Agent O'Rear about his communications with McClanahan and Allen. Agent O'Rear instructed Agent Merryman to interview McClanahan and Allen again, and they provided the same information about the confession of Billy Hall that they had provided in 1982. Agent Merryman recorded a summary of the interview on forms known as "FBI 302 forms." *Id.* In January 1986, Agent O'Rear provided a letter to Knox County District Attorney Generals

Dossett and Crabtree informing them that the FBI had exculpatory information regarding Hutchison and Harper. McClanahan also took and passed a polygraph test. *Id.* at ¶ 42. General Dossett requested Jennings to have a Tennessee Bureau of Investigation ("TBI") Agent investigate the information in the letter, but no one disclosed any information to Hutchison or Harper. Hutchison's attorney attempted to obtain information from the Attorney General's office, but Jennings and Crabtree repeatedly informed him that they could not tell him anything. *Id.* at ¶ 43. On August 24, 1986, the Knox County District Attorney's Office informed Hutchison's lawyer that the FBI had information relating to the crime for which Hutchison and Harper had been convicted. *Id.* at ¶ 44. The criminal court of appeals notes that the revelation occurred shortly after McClanahan passed the lie detector test. *Hutchison v. State*, 1997 WL 789923, *3 (Tenn. Crim. App. 1997). In June of 1987, prosecutors disclosed the results of the TBI investigation to Hutchison's attorney orally, but Hutchison and Harper were not allowed to see the investigative files or the FBI 302 forms. *Id.* at ¶¶ 44-45.

Count one of the Amended Complaint describes the allegations against the individual prosecutors. The Amended Complaint alleges that Dixon, Jennings, and Crabtree violated Hutchison's and Harper's constitutional rights by failing "to take appropriate action upon receipt and with knowledge of the contents of the FBI 302s." Amended Complaint, ¶ 58. Count three of the Amended Complaint alleges that Comer, a confidential informant for the police, violated Hutchison's and Harper's civil rights when he allegedly falsely identified Hutchison and Harper in photographic line-ups. *Id.*

### B. Post-Conviction Proceedings

Hutchison and Harper appealed their conviction and raised nine issues on appeal. *See*

*State v. Harper*, 753 S.W.2d 360 (Tenn. Crim. App. 1987). One of the issues raised was their inability to cross-examine Billy Hall during their second trial. *Id.* at 368. The State did not call Mr. Hall as a witness at the second trial, and Hutchison and Hall failed to call him to testify. However, the assistant district attorney general presented Mr. Hall in the courtroom. The court determined that plaintiffs had no right to cross-examine Mr. Hall when the State did not call him as a witness. The court of criminal appeals affirmed Hutchison's and Hall's convictions. *Id.* at 362.

Hutchison's lawyer filed a motion to reopen Hutchison's case in August of 1987. *See State v. Hutchison*, 1990 WL 170437 (Tenn. Crim. App. 1991). The trial court granted a motion to withdraw the motion to reopen without prejudice. *Id.* at *1. Hutchison resubmitted the motion to reopen on March 2, 1989. The trial court denied the motion due to lack of support in the form of affidavits from alleged witnesses. The court of criminal appeals affirmed the trial court on November 7, 1990. The appellate court opinion notes that plaintiffs sought to introduce "new evidence" of remarks made to Paul Allen by Billy Hall that Billy Hall committed the attempted burglary and Comer shooting. *Id.* Plaintiffs allege that the court held the FBI information was not newly discovered evidence because Hutchison's and Harper's assertions were unsupported by sworn proof or affidavits. The court did hold that the motion was unsupported by affidavits. However, it also noted that Billy Hall was in court during the second trial pursuant to a defense subpoena, but he did not testify. *Id.* The court noted that in filing a motion for a new trial, an accused:

> must file an affidavit setting forth facts showing that he and his counsel exercised reasonable diligence and were not negligent in the search for evidence in preparation for the trial of the case, that he and his counsel had no pre-trial knowledge of the alleged newly discovered evidence, and it must be supported by

> the affidavit of the new witness showing the materiality of the testimony and that
> it had not been communicated to the accused prior to trial.

*Id.* (citing *Jones v. State*, 452 S.W.2d 365, 367 (Tenn. Crim. App. 1970)). The appellate court

determined that the trial court correctly found a lack of adequate affidavits. *Id.* Hutchison and

Harper still did not have access to the FBI 302 forms at the time of this appeal. Amended

Complaint, ¶ 46.

Hutchison and Harper finally received copies of the FBI 302 forms when the trial court

ordered the Attorney General's Office to produce them. Amended Complaint, ¶ 47. Hutchison

and Harper also first received information regarding the FBI laboratory reports in 1991

following a Freedom of Information Act request they had filed in pursuit of copies of the FBI

302 forms. *Id.*

After denial of their motion for a new trial, Harper and Hutchison filed petitions for post-

conviction relief. Amended Complaint, ¶ 48. In early 1996, the Knox County Criminal Court

granted post-conviction relief of a new trial based on the information obtained by the FBI from

McClanahan and Allen. *See Hutchison v. State*, 118 S.W.3d 720, 724 (Tenn. Crim. App. 2003);

*Hutchison v. State*, 1997 WL 789923, *1 (Tenn. Crim. App. 1997). The Court of Criminal

Appeals reversed the trial court's grant of a new trial, noting that the FBI 302 forms did not exist

at the time of the second trial. *Hutchison v. State*, 1997 WL 789923 (Tenn. Crim. App. 1997).

The appellate court noted that:

> The post-conviction judge found that the District Attorney General first learned of
> McClanahan and Allen's statements in January, 1986. The record supports this
> finding. Nothing indicates that either the police officers who investigated this
> incident or the prosecutors who tried the case had any knowledge of an
> independent F.B.I. investigation . . . In short, the state had no reason to think that
> any F.B.I. agent might have information that was potentially material and

exculpatory to Hutchison's defense. Moreover, even if the prosecutor had requested copies of any "302" forms relating to the incident, none would have been forthcoming because they were not created until after the trial was complete. Despite the fact that two F.B.I. agents possessed information that may have changed the outcome of the trial, we must conclude that the state did not violate the rule of *Brady v. Maryland* in this case. To hold otherwise would require the state to make endless inquiries from every agency, state or federal, that might conceivably have information relating to local criminal investigations.

*Id.* at *8.

Although it found no *Brady* violation for the failure to disclose the FBI form 302s, the appellate court remanded the case for further proceedings to determine whether the state violated Hutchison's and Harper's due process rights by failing to disclose the FBI laboratory reports and allowing state witnesses to testify in contradiction to those reports. *Hutchison*, 1997 WL 789923 at *9. In describing the procedural history of the case, the appellate court quoted the trial court as summarizing the facts as follows:

The convictions . . ., however, are only the beginning of the story. At some point prior to the first trial, the defendants became aware that a person named Tommy McClanahan had information that might exculpate them. The record indicates that on February 6, 1984, Harper's attorney moved for a continuance in order to locate and interview McClanahan. McClanahan did not testify, but during Harper's testimony at the first trial, Harper blurted out that "Billy Hall" was the "shooter." At the post-conviction hearing, Hutchison testified that at some point, probably between the first and second trial, he was visited by two F.B.I. agents who told him that they had information indicating that Billy Hall and someone else had actually committed the burglary and the assault. Both defense counsel and the prosecutor testified that the defense had subpoenaed Billy Hall and that he was present throughout the second trial. The state paraded Hall before the jury at one point, but he was never placed on the stand. Hutchison's counsel at the second trial had Tommy McClanahan hidden in his office, and he intended to use McClanahan to impeach Hall's testimony. The plan fell apart, however, when McClanahan disappeared on the last day of the trial.

*Hutchison*, 1997 WL 789923 at *2.

Following the remand order, Hutchison discovered other exculpatory evidence that had

not been disclosed, including ballistics tests and statements from witnesses regarding the events on the night of the crime. Amended Complaint, ¶¶ 51-52.

In December 2000 after remand, the Knox County Criminal Court again granted Hutchison and Harper post-conviction relief of a new trial. The court of criminal appeals affirmed in March of 2003. *See Hutchison v. State*, 118 S.W.3d 720 (Tenn. Crim. App. 2003). The appellate court affirmed the trial court's conclusion that the prosecutors had failed to disclose exculpatory material in the form of the FBI laboratory reports and the statement of a witness whose recount of events on the night of the crime conflicted with the victim's account. *Hutchison*, 118 S.W.3d at 738.

Hutchison then moved to dismiss the case because much testimony and evidence had been lost or destroyed. The criminal court agreed and dismissed the action on January 21, 2005. [Court Doc. No. 31-2]. Hutchison and Harper filed this action in February of 1997. This Court stayed this action until resolution of the state court post-conviction proceedings. [Court Doc. No. 6]. In March of 2005, this Court lifted the stay. [Court Doc. No. 33]. Both Hutchison and Harper maintained their innocence throughout their trials, imprisonment, and appeals.

## II.    Standard of Review

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.

-11-

1996)).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).  The Sixth Circuit has explained that a court must " 'take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then . . . dismissal is proper.' " *Weiner*, 108 F.3d at 88 (quoting *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996)); *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)).  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

**B.      Motion for Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.  The

nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III.  Analysis

### A.  Section 1983

Section 1983 states in pertinent part:

-13-

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, a plaintiff must demonstrate two elements: "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)). Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).

### B. Crabtree's and Jennings' Motions to Dismiss

Plaintiffs allege that Crabtree and Jennings violated Hutchison's and Harper's due process rights under the Fourteenth Amendment to the U.S. Constitution by failing to produce exculpatory evidence in the form of the FBI 302 forms. Amended Complaint, ¶ 58. The parties do not dispute that General Crabtree and Mr. Jennings were acting under color of state law by acting in their prosecutorial capacities with respect to Hutchison's and Harper's case. However, General Crabtree and Mr. Jennings maintain that their actions were protected by either absolute or qualified immunity.

### 1. Absolute Prosecutorial Immunity

In *Imbler v. Pachtman*, the U.S. Supreme Court first outlined the parameters of absolute prosecutorial immunity. 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In that case the

Court concluded that prosecutors were entitled to absolute immunity in Section 1983 actions. *Id.*
at 427, 96 S.Ct. at 993. The Court outlined the parameters of that absolute immunity:

> We agree with the Court of Appeals that respondent's activities were intimately
> associated with the judicial phase of the criminal process, and thus were functions
> to which the reasons for absolute immunity apply with full force. We have no
> occasion to consider whether like or similar reasons require immunity for those
> aspects of the prosecutor's responsibility that cast him in the role of an
> administrator or investigative officer rather than that of advocate. We hold only
> that in initiating a prosecution and in presenting the State's case, the prosecutor is
> immune from a civil suit for damages under § 1983.

*Id.* at 430-431; 96 S.Ct. at 995. In *Burns v. Reed* the Supreme Court held that the act of a

prosecutor in giving legal advice to the police regarding probable cause was not protected by

absolute immunity. 500 U.S. 478, 489-90, 111 S.Ct. 1934, 1941-42, 114 L.Ed.2d 547 (1991).

The Court also held, however, that a prosecutor's act in participating in a probable cause hearing

before a judge was protected by absolute immunity because it related to the prosecutor's "'role

as advocate for the state.'" *Id.* at 491, 111 S.Ct. at 1941 (quoting *Imbler*, 424 U.S. at 431 n. 33,

96 S.Ct. at 995 n. 33); *see also, Lomaz v. Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998).

In *Buckley v. Fitzsimmons* the Supreme Court further delineated the parameters of

absolute prosecutorial immunity. 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The

Court noted that "the *Imbler* approach focuses on the conduct for which immunity is claimed,

not on the harm that the conduct may have caused or the question whether it was lawful." *Id.* at

271, 113 S.Ct. at 2615. In *Buckley* the Court reiterated its holding from *Burns*:

> [a] prosecutor's administrative duties and those investigatory functions that do not
> relate to an advocate's preparation for the initiation of a prosecution or for
> judicial proceedings are not entitled to absolute immunity. . . .We have not
> retreated, however, from the principle that acts undertaken by a prosecutor in
> preparing for the initiation of judicial proceedings or for trial, and which occur in
> the course of his role as an advocate for the State, are entitled to the protections of
> absolute immunity. Those acts must include the professional evaluation of the

-15-

evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

509 U.S. at 273, 113 S.Ct. at 2615 (citing *Burns*, 500 U.S. at 494-96, 111 S.Ct. at 1943-44.  The

Court further noted that:

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.  When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other.'

*Buckley*, 509 U.S. at 273, 113 S.Ct. at 2616 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th

Cir. 1973)).  The Court held that a prosecutor's alleged fabrication of false evidence during the

investigatory phase of an unsolved crime and a prosecutor's statements to the press were subject

only to qualified immunity.  *Buckley*, 509 U.S. at 275-277, 113 S.Ct. at 2616-17.  In *Kalina v.

Fletcher*, the Supreme Court reviewed whether a prosecutor who allegedly made false statements

in an affidavit supporting an application for an arrest warrant was entitled to absolute immunity.

522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).  The Court focused on the "nature of the

function performed, not the identity of the actor who performed it."  *Id.* at 127, 118 S.Ct. at 508

(quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)).  It

held that no absolute immunity existed where a prosecutor functioned as a complaining witness

in filing an affidavit in support of an application for an arrest warrant.  *Kalina*, 522 U.S. at 131;

*see also Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997).

The federal Circuit Courts of Appeal have further attempted to define the boundaries of

absolute prosecutorial immunity.  In *Holloway v. Brush* the Sixth Circuit noted that the

-16-

"analytical key to prosecutorial immunity, therefore, is *advocacy*–whether the actions in question

are those of an advocate."  220 F.3d 767, 775 (6th Cir. 2000).  In *Ireland* the Sixth Circuit

determined that a "prosecutor's decision to file a criminal complaint and seek an arrest warrant

and the presentation of these materials to a judicial officer fall squarely within the aegis of

absolute prosecutorial immunity."  113 F.3d at 1446.  A prosecutor's use of perjured testimony

at trial and the non-disclosure of exculpatory information are likewise protected by the doctrine

of absolute immunity.  *See Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2004) (citing

*Imbler*, 424 U.S. at 413, 430, 96 S.Ct. 984); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986).

As the Sixth Circuit recently noted, "[p]rosecutorial decisions regarding witness testimony,

including what witnesses to use at trial, and what questions to ask them, are activities intimately

associated with the judicial phase of a criminal trial and, therefore, are protected by absolute

prosecutorial immunity." *Spurlock*, 330 F.3d at 798.

> However, absolute immunity does not extend to actions taken after the conclusion of

criminal proceedings.  In *Spurlock* the Sixth Circuit determined that

> [a]bsolute immunity applies to the adversarial acts of prosecutors during post-
> conviction proceedings, including direct appeals, habeas corpus proceedings, and
> parole proceedings, where the prosecutor is personally involved in the subsequent
> proceedings and continues his role as an advocate. . . . However, where the role as
> advocate has not yet begun, namely prior to indictment, or where it has
> concluded, absolute immunity does not apply.

*Id.* at 799 (citing *Houston v. Partee*, 978 F.2d 362, 365-66 (7th Cir. 1992)).  In *Spurlock* the Sixth

Circuit held that a "prosecutor who injects himself into a post-trial investigation into the

possibility of misconduct during the trial is not acting as an advocate."  330 F.3d at 799.  The

court also held that "coercing a witness to maintain his false testimony" in post-trial proceedings

does "not constitute protected advocacy."  *Id.*  In *Houston* the Seventh Circuit recognized that

-17-

prosecutorial immunity applies when the prosecutor is involved in the appellate proceedings. *See id.* at 366; *Parkinson v. Cozzolino*, 238 F.3d 145, 151 (2d Cir. 2001). However, the court held that the prosecutors were not entitled to prosecutorial immunity where they were not personally involved in the post-conviction proceedings. *Houston*, 978 F.2d at 366.

In the Amended Complaint plaintiffs allege that Crabtree, Jennings, and Dixon failed to disclose exculpatory material in the form of the FBI laboratory reports, a witness statement, and the FBI form 302s. It is undisputed that the FBI form 302s did not exist prior to the end of the second trial. Thus, only the FBI laboratory reports and the witness statement could have been disclosed to Hutchison and Harper prior to the second trial. It also appears from the Amended Complaint that the Knoxville police obtained the FBI laboratory reports following the arrest of Hutchison. The police department's attainment of the reports did not relate to an investigation prior to seeking a warrant for Hutchison's arrest because police officers sought the reports only after his arrest. Amended Complaint, ¶¶ 22, 27. Further, the Amended Complaint does not allege that defendants Crabtree, Jennings, or Dixon had any role in obtaining the FBI laboratory reports or the witness statement. Amended Complaint, ¶ 27. Thus, the alleged failure to disclose the exculpatory FBI laboratory report and witness statement by Crabtree, Jennings, and Dixon appears to relate intimately to their prosecutorial duties relating to preparation of the case for trial and not to their investigative or administrative duties.

In *Ybarra v. Reno Thunderbird Mobile Home Village*, the Ninth Circuit held that a prosecutor's decision to release a mobile home that allegedly contained exculpatory evidence prior to trial was protected by absolute immunity. 723 F.2d 675, 678 (9th Cir. 1984). In *Long v. Satz* the Eleventh Circuit agreed that the "task of evaluating the credibility of the alleged

exculpatory information and of determining its bearing on the trial" "requires the exercise of prosecutorial discretion." 181 F.3d 1275, 1279 (11th Cir. 1999). The Court, therefore, concludes that the failure to disclose the exculpatory FBI laboratory reports is entitled to absolute prosecutorial immunity.

Defendants Crabtree and Jennings also contend that their failure to disclose the FBI form 302s is entitled to absolute immunity. The Court disagrees. The Amended Complaint alleges that General Crabtree and Mr. Jennings did not work on Hutchison's and Harper's post-conviction appellate proceedings. Amended Complaint, ¶ 58. The parties also agree that the FBI Form 302s did not exist until after the second trial during the post-conviction proceedings. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6) this Court must consider the facts as alleged in the Amended Complaint. *See Weiner*, 108 F.3d at 88. Because plaintiffs allege that General Crabtree and Mr. Jennings were not involved in the appellate proceedings in this case, the Court concludes that they are not entitled to absolute immunity regarding the delay in the disclosure of the FBI form 302s. As the Sixth Circuit noted in *Spurlock*, where the role of advocate has ended, absolute immunity no longer applies. 330 F.3d at 799; *see also, Houston*, 978 F.2d at 366.

### 2. Qualified Prosecutorial Immunity

Even if a prosecutor is not entitled to absolute immunity, he or she may be entitled to qualified immunity. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police*

-19-

*Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107

S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  The U.S. Supreme Court has established a two-part test for

determining whether a law enforcement officer is entitled to qualified immunity.  *See Lyons v.*

*City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct.

596, 160 L.Ed.2d 583 (2004)).  Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a
> constitutional right.' . . . If the plaintiff can establish that a constitutional violation
> occurred, a court should ask 'whether the right was clearly established . . . in light
> of the specific context of the case, not as a broad general proposition.

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d

272 (2001)).  This analysis should consider the legal rules that are clearly established at the time

the defendants took the alleged actions.  *See Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995)

(relying on *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523

(1987)).  Once the defendants claim the affirmative defense of qualified immunity, the burden

shifts to the plaintiff to demonstrate that the defendants are not entitled to the defense of

qualified immunity.  *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) (citing *Gardenhire*, 205

F.3d at 311).

The threshold issue to analyze is whether defendants violated a constitutional right.

*Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994).  Plaintiffs argue that

defendants Crabtree and Jennings violated Hutchison's and Harper's constitutional rights under

*Brady v. Maryland*.  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  In *Brady* the Supreme

Court determined that a prosecutor's suppression of evidence favorable to a criminal defendant

upon request violated the Due Process Clause of the Fourteenth Amendment where the evidence

was material to either guilt or to punishment of the criminal defendant.  *Id.* at 87, 83 S.Ct. at

-20-

1196-97.  Federal courts have determined that the *Brady* rule identifies a "trial right."  *See*

*Gauger v. Hendle*, 2002 WL 31130087, *6 (N.D. Ill. 2002), *aff'd in part vacated in part,*

*remanded by* 349 F.3d 354 (7th Cir. 2003) (quoting *Newsome v. McCabe*, 256 F.3d 747, 752 (7th

Cir. 2001)); *see also, U.S. v. Ruiz*, 536 U.S. 622, 628, 122 S.Ct. 2450, 2454-55 (2002).

In *Gauger* the district court addressed whether exculpatory evidence first discovered after

trial was subject to the requirements of *Brady v. Maryland*.  2002 WL 31130087 at *8-9.  The

court analyzed the issue, noting that "despite the few cases cited above and the parties'

agreement on the issue, the court has been unable to find any definitive authority that *Brady*

provides the proper framework for analyzing [the plaintiff's] claim against the prosecutors."  *Id.*

at *9.  The court then analogized the plaintiff's claim as one of wrongful imprisonment or

deprivation of liberty without due process of law, instead of a failure to disclose exculpatory

material under *Brady*.  *Id.* at *10.  In *Gauger* the district court determined that two of the

prosecutors were not entitled to absolute immunity, but were nevertheless protected by qualified

immunity for their delay in disclosing post-trial exculpatory evidence.  *Id.* at *12-13.  It found

that although the prosecutors had violated the plaintiff's due process rights by not disclosing the

exculpatory evidence, the law was not clearly established in 1997 that the prosecutors were

required to disclose the evidence immediately.  The court acknowledged that some courts had

discussed a prosecutor's obligation to disclose exculpatory evidence during post-trial

proceedings.  *Id.* at *9 (citing *Thomas v. Goldsmith*, 979 F.2d 746, 749-50 (9th Cir. 1992);

*Monroe v. Butler*, 690 F.Supp. 521, 525 (E.D. La. 1988); *Smith v. Roberts*, 115 F.3d 818, 820

(10th Cir. 1997)).  The court noted that the few cases to discuss the issue "do not address the

timing issue."  *Id.* at *12.  Thus, the district court held the prosecutors were entitled to qualified

immunity. The court concluded that it "was not aware of any cases (and certainly not before 1996) that establish *when* a prosecutor must turn over exculpatory evidence obtained during the pendency of a direct appeal or some other post-conviction proceeding." *Id.* at *13.

In addition to arguing that the law was unclear in 1986 regarding when exculpatory material must be disclosed in post-trial proceedings, Crabtree and Jennings further argue that the law is not clear that information must be disclosed to a criminal defendant when the defendant already possesses substantially the same information. The Sixth Circuit has held that no *Brady* violation occurs if a criminal defendant "'knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to defendant from another source.'" *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)); *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir. 1998). Other federal courts have also held that *Brady* does not require the government to turn over exculpatory evidence where the defendant had access to substantially similar information. *See United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996); *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 184 (1986); *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990); *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004).

Although the Amended Complaint does not admit that Hutchison and Harper had access to the information contained in the FBI form 302s prior to their second trial, the criminal court proceedings make clear that Hutchison and Harper were aware that Billy Hall may have been the individual who shot Mr. Comer and that Mr. McClanahan had information helpful to them about Billy Hall's confession. *See Hutchison*, 118 S.W.3d at 724. Hutchison apparently subpoenaed

Billy Hall at the second trial and had Mr. McClanahan hidden in Hutchison's attorney's office. *Id.* Thus, the record suggests that Hutchison and Harper had access to substantially the same information later summarized in the FBI form 302s after the second trial.

It is possible that defendants' Crabtree's and Jennings' failure to disclose the FBI form 302s promptly to Hutchison and Harper constituted a due process violation because of a continued deprivation of liberty. *See Gauger*, 2002 WL 31130087 at *12. It is important to note, however, that Hutchison was serving a legitimate sentence for possession of burglary tools at the time, so he would have remained in prison despite the prompt disclosure of the form 302 information.

Crabtree and Jennings are entitled to qualified immunity. Plaintiffs direct this Court to no case clearly indicating that the eight-month delay in disclosing the FBI form 302 information that the prosecutors had reason to believe Hutchison and Harper had access to in a different format clearly violated their constitutional rights under *Brady* or any other case doctrine. *Gauger*, 2002 WL 31130087 at *13-14. Crabtree and Jennings also note that federal regulations restricted them from disclosing the FBI form 302s. *See* 28 C.F.R. §§ 16.21-16.26. Plaintiffs merely describe Crabtree's and Jennings' conduct as "obviously wrong". However, they fail to direct this Court to Supreme Court, Sixth Circuit or other federal court precedent demonstrating that in 1986 when Crabtree and Jenning failed promptly to disclose the FBI form 302s that Hutchison's and Harper's constitutional rights to obtain such information promptly was clearly established. A right may be defined as clearly established by looking to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decisions of other circuits. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir.

-23-

2000)).

Law enforcement officials will be entitled to qualified immunity " 'when their decision was *reasonable,* even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Pray*, 49 F.3d at 1158 (quoting *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)). Defendants Crabtree and Jennings turned over the FBI form 302s after eight-months and after concluding their investigation into the information, including subjecting McClanahan to a lie detector test. They also had reason to believe that Hutchison and Harper already had access to the information in the FBI form 302s due to Billy Hall's presence at the second trial. Further, federal regulations restrict the disclosure of the FBI form 302s. *See* 28 C.F.R. §§ 16.21-16.26. Thus, it is far from clear that based on the law in 1986, defendants Jennings and Crabtree violated a clearly established right of Hutchison and Harper. This Court concludes that defendants Crabtree and Jennings are entitled to qualified immunity for their failure to disclose the FBI form 302s following Hutchison's and Harper's second trial. Their motion to dismiss will, therefore, be granted.

### C.       Defendant Dixon's Motion for Summary Judgment

Mr. Dixon moves for summary judgment dismissal of the claims against him. [Court Doc. No. 54-1]. He has submitted an affidavit in support of his motion. [Court Doc. No. 54-2, Affidavit of J. Mikel Dixon ("Dixon Aff.")]. From December 1981 until July 1985, Mr. Dixon served as an Assistant District Attorney with the District Attorney General for the 6th State Judicial District in Knoxville. Dixon Aff., ¶ 2. He prosecuted Hutchison and Harper in their

first trial. *Id.* at ¶ 3. The Comer family requested his assistance as a special prosecutor to serve with defendant Jennings in prosecuting Hutchison and Harper in the second trial. *Id.* at ¶ 5. He was in private practice at that time, but he assisted Jennings as a special prosecutor during the second trial. *Id.* After the end of the second trial, Dixon returned to private practice. *Id.* Mr. Dixon asserts that:

> At the completion of that trial and the convictions of Mr. Hutchison and Mr. Harper, my involvement in their prosecution ended. I was later called to testify as a witness in post-conviction proceedings, but I had no further involvement whatsoever in prosecuting the State's case or in handling any issues that arose after the completion of the second trial.
> In particular, . . . I had no involvement whatsoever in any post-trial disclosures to the District Attorney's Office by the FBI of any information obtained by Agents Merryman or Mann, or in any communications to or from lawyers for Mr. Hutchison and Mr. Harper regarding such information. Any such information was not disclosed to me. I never saw or had access to the FBI 302 forms, and was not even aware of them or their contents at the times alleged in the Amended Complaint. Further, I would not have had any authority to disclose or to withhold the FBI 302 forms or any information they contained.
> At no time did I ever attempt to suppress or withhold any subsequently discovered exculpatory information as alleged in Count One . . . of the Amended Complaint.

*Id.* at ¶¶ 5-7. Plaintiffs do not rebut these facts, they merely argue that it is too early in the litigation to know what Dixon's role in the prosecution and disclosure of exculpatory evidence was. However, we have Dixon's own affidavit attesting to his role in the prosecution of the case and the failure to disclose exculpatory evidence. In response to affidavits on a motion for summary judgment, the plaintiffs may not rest upon the allegations and denials in their complaint, but instead they "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The parties do not contest that as a special prosecutor, Mr. Dixon was acting under color of state law for purposes of Section 1983 liability. As discussed *supra* in Part III.B.1, Dixon is

-25-

protected by absolute immunity for any failure to disclose the exculpatory FBI laboratory report and witness statement prior to the first or second trial. Special prosecutors are entitled to absolute prosecutorial immunity to the same extent as state prosecutors because the test for immunity "turns on 'the nature of the function performed, not the identity of the actor who performed it.'" *Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

Dixon also asserts that he is not liable under Section 1983 for any failure to disclose the FBI form 302s because he had returned to private practice at that time and had no further involvement in the case. The Supreme Court has held that a "'public official is liable under § 1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights.'" *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) (quoting *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)(internal quotation marks and citation omitted)). As the Sixth Circuit further explained, "[c]ausation in the constitutional sense is no different from causation in the common law sense. Indeed, '[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *McKinley*, 404 F.3d at 438 (quoting *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). Further, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see also, Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996); *Bennett v. Schroeder*, 99 Fed. Appx. 707, 712-13 (6th Cir. 2004); *Triplett v. Azordegan*, 570 F.2d 819, 823-24 (8th Cir. 1978). The alleged violation must be "based upon active unconstitutional behavior." *Summers*

-26-

*v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Mr. Dixon has produced evidence in the form of his affidavit that he was no longer acting as a special prosecutor at the time the other defendant prosecutors became aware of the FBI form 302s. Dixon Aff., ¶ 5. He had returned to private practice at that time and had no awareness of or role in the disclosure or failure to disclose the FBI form 302s. *Id.* at ¶¶ 6-7. Plaintiffs have failed to rebut Mr. Dixon's evidence with any substantive evidence to suggest that Mr. Dixon personally participated in withholding the FBI form 302s. Therefore, they have failed to establish an essential element of their Section 1983 claim, and summary judgment in favor of Mr. Dixon is appropriate. *See Bennett*, 99 Fed. Appx. at 714. Any failure by Mr. Dixon to come forward with evidence of the FBI form 302s was a failure as a private citizen since he was no longer operating as a special prosecutor when the FBI form 302s were generated. *See e.g., Triplett*, 570 F.2d at 823-24. Mr. Dixon's motion for summary judgment will be GRANTED.

### D. Mr. Comer's Motion to Dismiss

As stated in Part III.A., *supra*, to state a claim under Section 1983, a plaintiff must demonstrate two elements: "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)).

Plaintiffs allege that Mr. Comer, the crime victim, conspired with the Knoxville Police Department falsely to identify Hutchison and Harper as the persons who shot him to obtain leniency from the police regarding the criminal investigation into his own alleged conduct in

distributing large quantities of controlled substances. Amended Complaint, ¶ 23. The Amended

Complaint asserts that certain members of the Knoxville Police Department were trying to obtain

probable cause for Hutchison's arrest because they suspected him of being involved in an

automobile theft ring. *Id.* Thus, plaintiffs argue, Mr. Comer conspired with the Knoxville Police

Department to violate Hutchison's and Harper's due process rights under the Fourteenth

Amendment.

   The first question the Court will address is whether the Amended Complaint sufficiently

alleges that Mr. Comer was acting "under color of state law." 42 U.S.C. § 1983. The Sixth

Circuit has declined "'to establish a per se rule that the activities of paid government informants

must always be considered government action.'" *Hiser v. City of Bowling Green*, 42 F.3d 382,

383 (6th Cir. 1994) (quoting *Ghandi v. Police Department*, 823 F.2d 959, 963 (6th Cir. 1987)). In

*Lugar v. Edmundson* the Supreme Court advised that in determining whether state action exists

for purposes of Section 1983:

> [o]ur cases have accordingly insisted that the conduct allegedly causing the
> deprivation of a federal right be fairly attributable to the State. These cases
> reflect a two-part approach to this question of 'fair attribution.' First, the
> deprivation must be caused by the exercise of some right or privilege created by
> the State or by a rule of conduct imposed by the State or by a person for whom
> the State is responsible . . . Second, the party charged with the deprivation must
> be a person who may fairly be said to be a state actor. This may be because he is
> a state official, because he has acted together with or has obtained significant aid
> from state officials, or because his conduct is otherwise chargeable to the State.
> Without a limit such as this, private parties could face constitutional litigation
> whenever they seek to rely on some state rule governing their interactions with
> the community surrounding them.

457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982).

   An informant may be considered to have acted under color of state law when " 'the

private party has acted with the help of or in concert with state officials.'" *DiNicola v. DiPaolo*,

945 F.Supp. 848, 855 (W.D. Penn. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d. Cir.), *cert. denied*, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995)).  Federal courts may find informants to be acting under color of state law for Section 1983 purposes  "if the informant acts in an investigatory capacity at the direction of or under the supervision of governmental authorities and if there is a nexus between the informant's activities and the activities of the authorities themselves." *DiNicola*, 945 F.Supp. at 857 (citing *Bartels v. Mueller*, 1989 WL 151196 *5 (E.D. Penn. 1989); *Ghandi*, 823 F.2d at 964; *Matje v. Leis*, 571 F.Supp. 918, 926-27 (S.D. Ohio 1983)).

In *Matje*, the district court denied summary judgment to the defendants regarding the question of whether an informant had acted under color of state law because it found sufficient allegations of a nexus between the informant and the law enforcement officers who may have sanctioned or tacitly acquiesced to the informant's actions.  571 F.Supp. at 926.  Among other things, the court found evidence that the informant had talked of being a police agent while in the company of a law enforcement officer, the officers had used his services almost daily during the relevant time period, the officers knew that the informant's involvement in drug trafficking and manufacturing in violation of their own policy regarding informants, and the officers entrusted the informant with large sums of money for use in purchasing drugs.  *Id.* at 927.

Other courts have determined that private actors, without proof of a close nexus to law enforcement officers, are not state actors for Section 1983 purposes even when they provide a false report to the police.  As one district court stated, " 'the mere furnishing of information by a private party to a law enforcement official, even if the information is false, is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a

private party under § 1983.'" *Ferebee v. Smith*, 2005 WL 2709588, *3 (D. S.D. 2005) (quoting

*Young v. Arkansas Children's Hosp.*, 721 F.Supp. 197, 198 (E.D. Ark. 1989)); *see also Daniel v.*

*Ferguson*, 839 F.2d 1124, 1130 (5ᵗʰ Cir. 1988) (noting that "[p]olice reliance in making an arrest

on information given by a private party does not make the private party a state actor"). In one

case involving an individual whom the plaintiff claimed had "wrongfully implicated him in the

charges that were dismissed. . . .", the court noted that

> [i]n telling the police about the plaintiff's involvement in the crime for which the
> two were arrested, [the defendant] was neither acting under color of state law nor
> violating the plaintiff's constitutional rights. Even if [the defendant] was lying,
> the mere fact that he talked to police cannot be fairly characterized as part of a
> 'conspiracy.' While private parties who conspire with state actors to deprive an
> individual of his or her constitutional rights may be sued under 42 U.S.C. § 1983 .
> . . [the defendant's] cooperation with the police is insufficient to support an
> inference that he reached an understanding with them to violate the plaintiff's
> constitutional rights. If the court were to hold otherwise, every informant or co-
> defendant who made a deal with prosecutors could be liable under the Civil
> Rights Act.

*Ercoli v. Paiva*, 2004 WL 539998, *1-2 (N.D. Ill. 2004). *See also Roche v. John Hancock*

*Mutual Life Ins. Co.*, 81 F.3d 249, 254 n.2 (1ˢᵗ Cir. 1996).

> In this action, plaintiffs allege that at the time Mr. Comer
>
> identified Leonard Hutchison from the photo lineup, Comer knew or should have
> known that he could not positively identify Hutchison as the shooter. At that
> time, James David Comer was a 'confidential informant' who was cooperating
> with local and/or federal law enforcement officials to avoid a criminal prosecution
> of himself for the illegal dispensing of large quantities of controlled substances.
> Law enforcement, to include Patrick Wade believed Leonard Hutchison was
> actively involved in auto theft and they wished to take him off the street. James
> David Comer agreed to cooperate by identifying Hutchison from the photo lineup.

Amended Complaint, ¶ 23. Because Mr. Comer brings a motion to dismiss under Fed. R. Civ. P.

12(b)(6) this Court must view the facts as alleged in the Amended Complaint. *See Weiner*, 108

F.3d at 88. Those alleged facts indicate a sufficient nexus between state law enforcement

officers and Comer that Comer's actions constituted action under color of state law for purposes of Section 1983.

Plaintiffs allege that Comer's actions in conspiring with the police violated his constitutional rights by allowing the police to arrest him unlawfully. It is true that an unlawful arrest without probable cause violates the Fourth Amendment to the U.S. Constitution. *See e.g.*, *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984); *Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Thus, based on the allegations in plaintiffs' Amended Complaint, it is possible that a set of facts exists under which plaintiffs might recover from Mr. Comer under Section 1983. This Court, however, states no opinion regarding whether the claims against Mr. Comer in the Amended Complaint would survive a motion for summary judgment.

## IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that defendants Crabtee's and Jennings' motions to dismiss will be **GRANTED**. Defendant Dixon's motion for summary judgment will be **GRANTED**. Defendant Comer's motion to dismiss will be **DENIED**.

A separate order will enter.

_____
*/s/  R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
