UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | | |
|---|---|---|
| JENNY HARPER, as the widow and next of kin of JAMES H. HARPER, LEONARD D. HUTCHISON, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| *v.* | ) ) | No. 3:97-cv-80 *Edgar* |
| ARTHUR BOHANAN, JIM MORRIS, PATRICK WADE, REX OWENBY, JOE MANN, CLYDE MERRYMAN, TOM STILES, JAMES DAVID COMER, ERNEST PEEL, and CITY OF KNOXVILLE, | ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Plaintiffs Jenny Harper, as the widow and next of kin of James H. Harper, and Leonard

D. Hutchison bring this civil rights action against state and federal law enforcement officials,

Arthur Bohanan, Jim Morris, Patrick Wade, Rex Ownby,[1] Joe Mann, Clyde Merryman, Ernest

Peel, Tom Stiles, one private citizen, James David Comer, and the City of Knoxville.[2] Plaintiffs

assert claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for violation of their constitutional

due process rights under the Fourteenth Amendment to the U.S. Constitution against City of

Knoxville Police Department ("KPD") Officers Patrick Wade, Arthur Bohanan, Jimmie Morris,

Ernest Peel, and Tom Stiles in their individual and in their official capacities, and the City of

---

[1] It appears from the record that the correct spelling of Special Agent Owenby's name is "Ownby." Although the caption in this case refers to defendant Ownby as "Owenby," this Court will use the correct spelling of Special Agent Ownby's name.

[2] These defendants are those listed in the second amended complaint. Defendant Stiles was not individually named as a defendant until plaintiffs filed their second amended complaint. [Court Doc. No. 116]. Mr. Ownby was not named as an individual defendant until plaintiffs filed their amended complaint. [Court Doc. No. 36]. This Court has dismissed three other defendants, William Crabtree, David Jennings, and J. Mikel Dixon, from this action. [Court Doc. Nos. 93, 114].

Knoxville. Plaintiffs further assert a Section 1983 claim against Mr. Comer, an alleged police informant. Plaintiffs also bring claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, against Federal Bureau of Investigation ("FBI") Agents Rex Ownby, Clyde Merryman, and Joe Mann for violation of their due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. 1999 (1971).

Defendant Tom Stiles, a former KPD officer, moves for summary judgment dismissal of plaintiffs' claims against him. [Court Doc. No. 95]. Defendant Rex Ownby moves to dismiss plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). [Court Doc. No. 112]. Plaintiffs oppose these motions and have filed a motion to submit a late-filed response to Mr. Stiles' motion for summary judgment.

After reviewing the record in the light most favorable to the plaintiffs, the Court concludes that it will **GRANT** plaintiffs' motion to submit a late-filed response to defendant Stiles' motion for summary judgment. The Court further concludes that defendant Stiles' motion for summary judgment will be **GRANTED**. Defendant Ownby's motion to dismiss will also be **GRANTED**.

## I.    Background

This Court, as well as several state courts, have described the facts of this complicated case in great detail. *See Harper v. Bohanan*, 2006 WL 319029 (E.D. Tenn. 2006), *Hutchison v. State*, 1997 WL 789923 (Tenn. Crim. App. 1997); *State v. Harper*, 753 S.W.2d 360 (Tenn. Crim. App. 1987); *State v. Hutchison*, 1990 WL 170437 (Tenn. Crim. App. 1991); *Hutchison v. State*, 118 S.W.3d 720 (Tenn. Crim. App. 2003); [Court Doc. No. 31-2]. Because the facts have been

summarized in various other legal opinions, this Court will only summarize the salient facts pertaining to defendants Stiles and Ownby for purposes of reviewing the merits of their motions.

In 1985 a jury convicted Mr. Hutchison and Mr. Harper of theft of a vehicle and attempted homicide of James David Comer that occurred on September 1, 1982. [Court Doc. No. 36, Amended Complaint]. Mr. Hutchison served around fourteen years in the Tennessee State Regional Correction Facility Bledsoe State Penitentiary for possession of burglary tools, burglary of an automobile, and felonious assault with intent to commit second degree murder. *Id.* at ¶ 15. Mr. Harper served fourteen months in the Knox County jail and the Knox County Penal Farm for burglary of an automobile and felonious assault with intent to commit second degree murder. *Id.* at ¶ 16.

Plaintiffs' amended complaint alleges that they were wrongfully convicted due to the suppression of exculpatory evidence collected by KPD officers, prosecutors, and FBI agents. Such evidence includes an alleged exculpatory witness statement that contradicted the victim's statement, an exculpatory FBI laboratory report indicating that tools seized from Hutchison's apartment did not match the marks made on the vehicle that perpetrators attempted to steal, and an exculpatory confession to the crime made by another individual unassociated with the plaintiffs. The amended complaint also alleges that KPD officers tampered with the photographic line-up by which the victim, James David Comer, identified the plaintiffs. Plaintiffs further assert that defendant Comer and KPD officers conspired falsely to identify Hutchison so that Comer, an alleged confidential informant, could receive more lenient treatment in KPD's investigation into his own criminal activity. *See* Amended Complaint, ¶¶ 18, 20, 22, 23, 27, 31.

## A.     Defendant Tom Stiles' Alleged Actions

Although Stiles is not named individually in the amended complaint, he was served with a summons and the amended complaint, and he was identified as one of the "John and Jane Does" in the amended complaint.  [Court Doc. No. 96-1].  Stiles worked for the KPD from late 1965 through June of 1996.  [Court Doc. No. 96-2, Affidavit of Tom Stiles ("Stiles Aff."), ¶ 1]. By the time he retired, Stiles had achieved the rank of Criminal Investigator 3.  *Id.*

The amended complaint alleges that certain "John and Jane Doe" KPD police officers were "involved in the investigation of the cases of Hutchison and Harper's alleged automobile burglary and felonious assault."  [Court Doc. No. 36, Amended Complaint, ¶ 3].  Count three of the complaint lists "John and Jane Does" in the summary heading, and the count alleges that:

> Each of these Defendants acted under color of state law when they made the decisions they made.  They acted knowingly, and/or with willful, wanton and reckless disregard for Hutchison's and Harper's constitutional rights when they failed to make appropriate investigation, manipulated the photo line-up, falsely identified Hutchison and Harper in photo line-ups, suppressed exculpatory evidence, and failed to ensure proper testing and preservation of evidence during the course of their involvement in the investigation and prosecution of Hutchison and Harper.

Amended Complaint, ¶ 66.  The amended complaint further contends that:

> These individual Defendants deprived Hutchison and Harper of their due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution by acting willfully or in gross disregard, and with deliberate indifference to the unconstitutional incarceration of Hutchison and Harper.  They intentionally concealed exculpatory evidence, an act which violates the rights of which a reasonable person should be aware and of which all police officers are aware.  Convictions that result from such actions shock the conscience and therefore violate the due process clause.

Amended Complaint, ¶ 67.

Nowhere in the amended complaint do plaintiffs specify what actions Mr. Stiles took that violated their constitutional rights. Mr. Stiles, however, presents an affidavit indicating that he had little, if anything, to do with the investigation into the shooting of Mr. Comer. Mr. Stiles avers that the KPD initially assigned him to the case because he worked in the property crime division. Stiles Aff., ¶ 3. However, when Mr. Stiles arrived at the crime scene, he discovered that the Major Crimes Division of the KPD had also arrived due to the shooting of Mr. Comer. *Id.* Mr. Stiles "did not get out of [his] patrol car or speak to anyone at the crime scene and went back to the station." *Id.* Mr. Stiles also asserted he had no "personal involvement" in the prosecutions of either plaintiff. *Id.* at ¶ 4. With respect to both plaintiffs, Mr. Stiles testified that:

> I did not testify in his case; I did not investigate his case; I did not prepare, examine or in any way participate in any photo line-ups in his case; I did not examine, evaluate, review, or suppress any evidence in his case; I did not oversee, nor was I involved in, the testing and presentation of evidence in his case; I prepared no reports in his case; and I submitted no paperwork for his case.

*Id.* at ¶¶ 4-5. Mr. Stiles testified that he has "no personal knowledge" of the events summarized in the Amended Complaint. *Id.*

Plaintiffs present evidence of trial testimony from both their first and second criminal trials to refute Stiles' representations that he was not involved in the investigation and prosecution of plaintiffs.[3] Through these excerpts plaintiffs attempt to demonstrate that Stiles played some role in the investigation of the shooting of Mr. Comer. Testimony from the first

---

[3] Fortunately for plaintiffs, Mr. Stiles provided this Court with copies of the cited testimony from the first and second trial transcripts. This Court does not have access to Tennessee state criminal trial transcripts dating from many years ago. It also does not appear that the relevant trial transcripts have ever been docketed with this Court. To the extent that either plaintiffs or defendants wish to rely upon testimony from the plaintiffs' state criminal trials, they would be well-advised to provide this Court with copies of the testimony upon which they rely.

trial indicates that Officer Wade testified that Stiles "initially" handled the case, but then "Stiles

got sick, had to go to the hospital," so Officer Morris took over the investigation. [Court Doc.

No. 119-2, p. 3]. Mr. Comer testified at the first trial that he gave an account of his story to

either "Officer Morris or Officer Stiles," and a few questions later, Mr. Comer responded "yes"

to the prosecutor when asked "Is that what Stiles told you?" [Court Doc. No. 119-2, p. 5]. At

the second criminal trial, Officer Morris testified that he did not "recall ever talking to Mr.

Comer." [Court Doc. No. 119-3, p. 3]. During the second trial Mr. Comer testified that Mr.

Stiles came to talk to him about his version of the shooting while he was in the hospital. [Court

Doc. No. 119-3, pp. 5-6].

**B.     Defendant Rex Ownby's Alleged Actions**

Although Mr. Ownby is specifically named in the amended complaint, plaintiffs did not

list him as a defendant in the original complaint, nor did they list "John Does" in the original

complaint. [Court Doc. No. 4]. Plaintiffs filed the original complaint on January 14, 1997. The

original complaint does not allege that an FBI special agent failed to provide information to the

KPD that the special agent received from two undercover FBI agents. *Id.* Nothing in the

original complaint hints of Ownby's role in the plaintiffs' alleged injuries.

This Court issued an order on March 5, 1997 staying the proceedings in this action until

the completion of plaintiffs' post-conviction appeals through the state court system. [Court Doc.

No. 6]. This Court lifted the stay on March 16, 2005. [Court Doc. No. 33]. Plaintiffs filed their

amended complaint on June 13, 2005. [Court Doc. No. 36]. The amended complaint names

Special Agent Ownby as a defendant. *Id.* The record demonstrates that the plaintiffs served

Special Agent Ownby on July 21, 2005. [Court Doc. No. 59].

The amended complaint alleges that defendant Ownby was an FBI special agent who received relevant exculpatory evidence regarding the crimes with which plaintiffs were eventually charged. Amended Complaint, ¶ 8. The amended complaint further alleges that FBI agents Merryman and Mann obtained information that someone other than the plaintiffs had confessed to shooting Mr. Comer. *Id.* at ¶ 20. Because these agents were operating "deep undercover" in investigating an automobile "chop-shop ring," they allegedly contacted special agent Ownby to provide him with the information regarding the confession. *Id.* at ¶ 21. Agents Merryman and Mann allegedly expected that Special Agent Ownby would provide the information about the confession to the KPD because of his contacts there. *Id.* However, Ownby allegedly failed to do so. The amended complaint states that Special Agent Ownby and Agents Merryman and Mann:

> deprived Hutchison and Harper of their due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution when they acted willfully or in gross disregard and with deliberate indifference to the unconstitutional incarceration of Hutchison and Harper, including but not limited to their decision not to prepare written reports of the exculpatory information obtained from Paul Allen and Tommy McClanahan, contrary to FBI policy, and their decision not to report this exculpatory information to the [KPD].

Amended Complaint, ¶ 72.

## II.     Standard of Review

### A.     Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it

may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)). The Sixth Circuit has explained that a court must " 'take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then . . . dismissal is proper.' " *Weiner*, 108 F.3d at 88 (quoting *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996)); *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

### III. Analysis

### A. Section 1983 and *Bivens* Actions

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, a plaintiff must demonstrate two elements: "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)). Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the U.S. Supreme Court held that a plaintiff could bring a cause of action against a federal agent "acting under color of his authority" for damages due to the agent's unconstitutional actions. 403 U.S. 388, 389, 91 S.Ct. 1999, 2001 (1971). To establish a *Bivens* claim, a "plaintiff must allege facts which show that the individual defendant acted 'under color of federal authority' and was personally involved in the deprivation of the plaintiff's constitutional rights." *Mueller v. Gallina*, 137 Fed.Appx. 847, 850 (6th Cir. 2005) (citing *Browning v. Clinton*, 292 F.3d 235, 250 (D.C.Cir. 2002); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)).

### B. Tom Stiles' Motion for Summary Judgment

-10-

Mr. Stiles argues that plaintiffs' claims against him should be dismissed due to plaintiffs' inability to demonstrate that he played any role in the alleged constitutional violations against them. He relies on his affidavit that indicates he had no personal involvement in the investigation, preparation, evaluation, or prosecution of plaintiffs' case. Stiles Aff., ¶¶ 4-5. Mr. Stiles asserts that he did not testify in either of plaintiffs' two criminal trials. *Id.* Mr. Stiles further maintains that although he was assigned to the case initially, KPD quickly assigned the case to another officer. *Id.* at ¶ 3.

Plaintiffs oppose Mr. Stiles' motion for summary judgment and cite to excerpts from plaintiffs' first and second criminal trial transcripts. Although these transcripts provide some evidence of a dispute of fact between the parties regarding whether Mr. Stiles played a role in the initial stages of the investigation into the shooting of Mr. Comer, the question is whether the plaintiffs raise a *material* issue of fact regarding whether Mr. Stiles violated their constitutional rights. Plaintiffs present evidence that Officer Wade testified at plaintiffs' first criminal trial that Mr. Stiles initially worked on the investigation "and then Stiles got sick, had to go to the hospital, and Morris worked it." [Court Doc. No. 119-2, p. 3]. Plaintiffs also present evidence that Mr. Comer talked to either "Officer Morris or Officer Stiles" about the shooting and that Mr. Comer later responded affirmatively to a question regarding whether Mr. Stiles told him that Mr. Comer's relative had threatened to kill him. *Id.* at p. 5. The plaintiffs present evidence from the second trial that Officer Morris testified that he did not recall ever talking to Mr. Comer. [Court Doc. No. 119-3, p. 3]. Mr. Comer also testified at the second trial that Mr. Stiles came to talk to him in the hospital and mentioned to him that the police did not believe his story. *Id.* at pp. 5-6.

Plaintiffs have raised an issue of fact regarding whether Mr. Stiles was involved in the very initial stages of the investigation into the Comer shooting. In the first criminal trial Officer Wade verified Mr. Stiles' assertion that he was not involved in the majority of the investigation, apparently because he became sick and needed to go to the hospital. [Court Doc. No. 119-2, p.3].

Although plaintiffs raise a dispute of fact regarding whether Mr. Stiles ever spoke with Mr. Comer while he remained in the hospital after the shooting, their evidence does not raise a material issue of fact regarding whether Mr. Stiles violated the plaintiffs' constitutional rights. Mr. Stiles does not dispute that he was acting under color of state law as an officer with the KPD; however, plaintiffs are still responsible for demonstrating the other prong of the prima facie case for their Section 1983 action. This requires that they demonstrate a genuine issue of material fact that Mr. Stiles violated their constitutional rights. *See Cunningham*, 2003 WL 23471541 at *5. The conclusory allegations in the plaintiffs' amended complaint, which do not relate to Mr. Stiles' individual behavior, are not enough alone to withstand Mr. Stiles' motion for summary judgment. *See* Fed.R.Civ.P. 56(e). The only other evidence plaintiffs offer in support of their theory that Mr. Stiles violated their constitutional rights is evidence of trial testimony indicating that Mr. Stiles may have spoken to Mr. Comer in the hospital after the shooting. Even this evidence suggests that Mr. Stiles told Mr. Comer he did not believe Mr. Comer's story about who shot him; thus, this evidence suggests that Mr. Stiles believed that someone other than plaintiffs committed the shooting. This hardly demonstrates a violation of plaintiffs' constitutional rights.

Mr. Stiles is correct that plaintiffs must demonstrate that he had some kind of personal involvement in the alleged violation of plaintiffs' constitutional rights. In *Copeland v. Machulis*, the Sixth Circuit affirmed the district court's award of summary judgment to the defendant where the plaintiff failed to demonstrate that the defendant was "personally involved" in the alleged constitutional violations. 57 F.3d 476, 481 (6th Cir. 1995); *See also, Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 Fed.Appx. 707, 712-13 (6th Cir. 2004). The United States Supreme Court has held that " '[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.' " *Salehpour*, 159 F.3d at 206 (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). The Sixth Circuit has held that liability under Section 1983 "must be based upon active unconstitutional behavior" and a plaintiff needs to prove that the defendants "did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour*, 159 F.3d at 206.

Plaintiffs do not attempt to provide any evidence of a constitutional right held by Harper and Hutchison that Mr. Stiles violated. Aside from establishing that Mr. Stiles may have had some initial conversations with Mr. Comer following the shooting, plaintiffs offer no evidence connecting Mr. Stiles to any suppression of exculpatory evidence, false testimony, inadequate investigation, or any other potential constitutional violation. Without such evidence indicating a material issue of fact regarding whether Mr. Stiles was personally involved in the alleged constitutional violations against plaintiffs, plaintiffs' claims against Mr. Stiles must fail. As the Sixth Circuit noted in *Bennett*, plaintiffs have failed to establish an essential element of their

-13-

Section 1983 claim where they fail to show that Mr. Stiles "personally participated in the alleged deprivation of [plaintiffs'] constitutional rights." 99 Fed.Appx. at 714. For these reasons, Mr. Stiles' motion for summary judgment will be **GRANTED**.

### C.    Rex Ownby's Motion to Dismiss

Special Agent Ownby argues initially that the statute of limitations bars the plaintiffs' claims against him. State law determines the length of the statute of limitations period for *Bivens* actions. *See Harris v. U.S.*, 422 F.3d 322, 331 (6th Cir. 2005) (citing *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987)). "*Bivens* actions are governed by the same statute of limitations that govern causes of action under" Section 1983. *Jackson v. U.S.*, 24 F.Supp.2d 823, 829 (W.D. Tenn. 1998) (citing *McSurely*, 823 F.2d at 1005)). A one-year statute of limitations applies under Tennessee law. *Jackson*, 24 F.Supp.2d at 829 (citing Tenn. Code Ann. § 28-3-104(a)(3)).

The "question of when the statute of limitations begins to run, however, is determined by federal law." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 268-71, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). The Supreme Court has held that a Section 1983 "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 114 S.Ct. 2364 (1994). Special Agent Ownby argues that this occurred on January 22, 1996 upon the trial court's grant of post-conviction relief.

The Sixth Circuit has held that the statute of limitations in a Section 1983 action begins to run when the plaintiffs "knew or should have known of their injury." *Ruff*, 258 F.3d at 503. Applying *Heck*, the Sixth Circuit has determined that the statute of limitations does not begin to

-14-

run "until the charges are dismissed." *Id.* In *Ruff* the Sixth Circuit held that the rule in *Heck* also applies in *Bivens* actions. *Id.* at 502. Federal courts have held that Section 1983 and *Bivens* actions do not accrue for statute of limitations periods when a court remands the case to the criminal trial court for a new trial; instead, the conviction must be dismissed before the statute of limitations will begin to run. *See id.* at 503 (citing *Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996)).

The Sixth Circuit has also recognized that the statute of limitations for Section 1983 and *Bivens* actions begins "to run when the plaintiff has satisfied his term of imprisonment." *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir. 1999) (citing *Spencer v. Kemna*, 523 U.S. 1, 21, 25 n.8, 118 S.Ct. 978, 990, 992 n.8 (1998) (Souter, J., concurring) (Stevens, J., dissenting)); *see also Ruff*, 258 F.3d at 502. However, even in the event that a *Bivens* action plaintiff has been released from custody, the statute of limitations only begins to run once the plaintiffs "knew or should have known of their injury." *Ruff*, 258 F.3d at 503. In *Ruff* the Sixth Circuit held that although the plaintiffs had been released from custody, they did not know of their injury of wrongful conviction for statute of limitations purposes until the charges against them were dismissed. *Id.*

On January 22, 1996 the criminal court for Knox County, Tennessee granted the plaintiffs' petition for post-conviction relief based on its determination that exculpatory evidence was not made available to the plaintiffs. [Court Doc. No. 118-2]. Significantly, the court did not dismiss the charges against plaintiffs. The Court of Criminal Appeals reversed the trial court's grant of a new trial, noting that the exculpatory evidence, FBI 302 forms, did not exist at the time of the second trial. *Hutchison v. State*, 1997 WL 789923 (Tenn. Crim. App. 1997).

-15-

Although it found no *Brady v. Maryland* violation for the failure to disclose the FBI 302 forms, the appellate court remanded the case for further proceedings to determine whether the state violated Hutchison's and Harper's due process rights by failing to disclose FBI laboratory reports and allowing state witnesses to testify in contradiction to those reports. *Hutchison*, 1997 WL 789923 at *9. Although Harper had been released from prison by this time, the charges against plaintiffs had not been dismissed.

In December 2000 after remand, the Knox County Criminal Court again granted Hutchison and Harper post-conviction relief of a new trial. The court of criminal appeals affirmed in March of 2003. *See Hutchison v. State*, 118 S.W.3d 720 (Tenn. Crim. App. 2003).

Hutchison then moved to dismiss the case because much testimony and evidence had been lost or destroyed. The criminal court agreed and dismissed the action on January 21, 2005. [Court Doc. No. 31-2]. The Court does not know the precise dates of Hutchison's release from prison, but it appears that the state had released him by 1999 or 2000. *See* [Court Doc. No. 36].

Although Harper and Hutchison were both released from custody well before dismissal of the charges against them in January of 2005, under *Ruff*, their Section 1983 and *Bivens* actions did not accrue until they knew or should have known of the constitutional violations–i.e., wrongful convictions–against them. This did not occur until complete dismissal of the charges against them in 2005, rather than upon the granting of post-conviction relief of a new trial. *See Ruff*, 258 F.3d at 503. Thus, it appears that plaintiffs' claims were not ripe for adjudication when they filed their original complaint in 1997. The claims became ripe in 2005 when the criminal court dismissed the charges against them. This Court lifted the stay in this case in March of 2005, and plaintiffs filed their amended complaint naming Special Agent Ownby as a defendant

-16-

in June of 2005.  Therefore, this Court concludes that plaintiffs' claims were filed within the one-year statute of limitations period.

Special Agent Ownby argues that even if the statute of limitations does not bar plaintiffs' claims against him, the doctrine of qualified immunity applies and shields him from liability for any alleged constitutional violations in this case.  The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6ᵗʰ Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  The U.S. Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity.  *See Lyons v. City of Xenia*, 417 F.3d 565 (6ᵗʰ Cir. 2005) (citing *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).  Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' . . . If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.'

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  A right may be defined as clearly established by looking to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decisions of other circuits.  *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6ᵗʰ Cir. 2000)).

In addition, "[q]ualified immunity affords government officials an immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Burden v. Carroll*, 108 Fed.Appx. 291, 293 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This analysis should consider the legal rules that are clearly established at the time the defendants took the alleged actions. *See Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995) (relying on *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) (citing *Gardenhire*, 205 F.3d at 311). When a defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), the court "may dismiss [plaintiffs'] complaint only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).

The threshold issue to analyze is whether the defendant violated a constitutional right. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Plaintiffs argue that Special Agent Ownby violated Hutchison's and Harper's constitutional rights under *Brady v. Maryland*. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They point out that the trial court found a *Brady* violation for the failure to disclose information within the possession of the FBI. [Court Doc. No. 118-2]. However, they fail to disclose that the state criminal court of appeals specifically reversed this holding by the trial court. *Hutchison v. State*, 1997 WL 789923 at *7.

-18-

In *Brady* the Supreme Court determined that a prosecutor's suppression of evidence upon request that was favorable to a criminal defendant violated the Due Process Clause of the Fourteenth Amendment where the evidence was material to either guilt or to punishment of the criminal defendant. *Id.* at 87, 83 S.Ct. at 1196-97. The duty under *Brady* "extends to information in the possession of the law enforcement agency investigating the offense." *Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002) (citing *Kyles v. Whitley*, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). This includes "exculpatory information in the possession of any agency that participated in the investigation of the crime charged." *Ruiz v. U.S.*, 221 F.Supp.2d 66, 73 (D. Mass. 2002) (citing *Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). The *Brady* rule "does not, however, impose upon the government a duty to discover and produce exculpatory information in the possession of agencies not involved in the investigation." *Ruiz*, 221 F.Supp.2d at 74 (citing *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); (*United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)).

As one district court has framed the issue in the following way:

> The concept of constructive or imputed knowledge implies a concomitant duty to seek out *Brady* material from other government agencies working with the prosecution. As the Supreme Court recently framed the rule, 'the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.' . . . Although the prosecutor's general duty is clear, the exact point at which government agents can fairly be categorized as acting on behalf of the prosecution, thus requiring the prosecutor to seek out any exculpatory or impeachment evidence in their possession, is uncertain.

*Chandras v. McGinnis*, 2002 WL 31946711 *7 (E.D.N.Y. 2002) (quoting *Strickler v. Greene*, 527 U.S. 263, 280, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). The same district court acknowledged, "[t]he Second Circuit (and other courts) also have not required federal

prosecutors to learn about evidence possessed by state governments or other federal agencies that are not involved in the investigation of the particular defendants." *Chandras*, 2002 WL 31946711 at *8. In *U.S. v. Locascio*, the Second Circuit determined that the prosecution did not have a *Brady* obligation to disclose reports in the possession of the FBI pertaining to an unrelated crime that provided information relating to the credibility of a prosecution witness. 6 F.3d 924, 948-49 (2d Cir. 1993).

In this action the amended complaint does not allege that the FBI was the law enforcement agency investigating the offense; in fact, it acknowledges that the KPD was the law enforcement agency investigating the offense. The complaint asserts that FBI agents only discovered exculpatory evidence pertaining to the plaintiffs because they were investigating a "chop-shop ring" unrelated to the Comer shooting investigation. [Court Doc. No. 36, ¶ 20]. Although the amended complaint alleges that the KPD sent some tools obtained from Hutchison's home to an FBI laboratory for testing, it does not allege that the FBI was involved in any other way in the investigation of the Comer shooting. *Id.* at ¶ 27.

The only role the amended complaint alleges that Special Agent Ownby played is that he failed to notify the KPD of oral multiple hearsay evidence from two other FBI agents who were operating "deep undercover." [Court Doc. No. 36, ¶ 21]. Plaintiffs cite to no legal authority demonstrating that it was clearly established prior to 1986 that a law enforcement officer not associated with the agency conducting a criminal investigation violates the U.S. Constitution by failing to disclose exculpatory information in his possession to the agency conducting the investigation. Nor do they cite any legal precedent suggesting that a reasonable law enforcement officer should have known of his obligation to disclose hearsay evidence to a separate law

enforcement agency investigating a crime unrelated to any investigation by his agency. As recently as 2002, other district courts determined that the scope of the duty to search for information at law enforcement agencies not associated with the investigation was uncertain. *See Chandras*, 2002 WL 31946711 at *8. Without such legal authority, plaintiffs' claim that their amended complaint states a claim that Special Agent Ownby violated a clearly established constitutional right must fail.

**IV.    Conclusion**

After reviewing the record and the applicable law, the Court concludes that plaintiffs' motion to file an untimely response to defendant Stiles' motion for summary judgment will be **GRANTED**. Defendant Stiles' motion for summary judgment will be **GRANTED**. Defendant Ownby's motion to dismiss will be **GRANTED**.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
